MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Lozeau Drury LLP
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
Fax: (510) 749-9103 (fax)
E-mail: michael@lozeaudrury.com
E-mail: doug@lozeaudrury.com

ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (415) 763-9227
E-mail: andrew@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

RONALD G. PECK (State Bar No. 78892)
Law Offices of Schenone & Peck
1260 B Street, Suite 350
Hayward, California 94541
Tel: (510) 581-6611
Fax: (510) 581-6174
Email: rpeck1251@aol.com

Attorneys for Defendant
MELROSE METAL PRODUCTS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>MELROSE METAL PRODUCTS, INC., a corporation.<br><br>    Defendant. | Case No. 3:09-cv-03666-WHA<br><br>**STIPULATION TO DISMISS PLAINTIFF'S CLAIMS;** ~~[PROPOSED]~~ **ORDER GRANTING DISMISSAL [FRCP 41(a)(2)]** |

1  WHEREAS, on June 1, 2009, Plaintiff California Sportfishing Protection Alliance ("CSPA") provided Defendant Melrose Metal Products, Inc. ("Melrose Metal") with a Notice of Violations and Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365.

WHEREAS, on August 11, 2009, CSPA filed its Complaint against Melrose Metal in this Court, *California Sportfishing Protection Alliance v. Melrose Metal Products, Inc.,* Case No. 3:09-cv-03666-WHA.  Said Complaint incorporates by reference all of the allegations contained in CSPA's Notice.

WHEREAS, CSPA and Melrose Metal, through their authorized representatives and without either adjudication of CSPA's claims or admission by Melrose Metal of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the allegations of CSPA as set forth in the Notice and Complaint, thereby avoiding the costs and uncertainties of further litigation.  A copy of the Settlement Agreement and Mutual Release of Claims ("Settlement Agreement"), without the attached exhibits, entered into by and between CSPA and Melrose Metal is attached hereto as Exhibit 1 and incorporated by reference.

WHEREAS, the parties submitted the Settlement Agreement via certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice and the 45-day review period set forth at 40 C.F.R. § 135.5 has completed and the federal agencies have submitted correspondence to the Court indicating that they have no objection to the terms of the Settlement Agreement.

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the parties that CSPA's claims, as set forth in the Notice and Complaint, be dismissed.  The parties respectfully request an order from this Court dismissing such claims.  In accordance with paragraph 2 of the Settlement Agreement, the parties also request that this Court maintain jurisdiction over the parties through December 14, 2012, for the sole purpose of resolving any disputes between the

///
///
///
///
///

parties with respect to enforcement of any provision of the Settlement Agreement.

Dated: April 15, 2010                     Respectfully submitted,

                                          LOZEAU DRURY LLP


                                          By:     /s/ *Douglas J. Chermak*
                                                  Douglas J. Chermak
                                                  Attorney for Plaintiff California Sportfishing
                                                  Protection Alliance


                                          LAW OFFICES OF SCHENONE & PECK


                                          By:     /s/ *Ronald G. Peck*  (as authorized on 4/14/10)
                                                  Ronald G. Peck
                                                  Attorney for Defendant Melrose Metal Products, Inc.

# [PROPOSED] ORDER

Good cause appearing, and the parties having stipulated and agreed,

IT IS HEREBY ORDERED that Plaintiff California Sportfishing Protection Alliance's claims against Defendant Melrose Metal Products, Inc.., as set forth in the Notice and Complaint filed in Case No. 3:09-cv-03666-WHA, are hereby dismissed.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the parties through December 14, 2012 for the sole purpose of enforcing compliance by the parties of the terms of the Settlement Agreement, attached to the parties' Stipulation to Dismiss as Exhibit 1.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: April 19, 2010



Judge William
United States

Stipulation To Dismiss Plaintiff's Claims; [Proposed] Order Granting Dismissal

4

Case No. 3:09-cv-03666-WHA

# EXHIBIT 1

### SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance (collectively "CSPA") and Melrose Metal Products, Inc. ("Melrose") (collectively, the "SETTLING PARTIES") with respect to the following facts and objectives:

### RECITALS

**WHEREAS**, California Sportfishing Protection Alliance is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the San Francisco Bay and other California waters. Bill Jennings is the Chairperson and a member of the California Sportfishing Protection Alliance;

**WHEREAS**, Melrose Metal Products, Inc. is a corporation organized under the laws of the State of California that owns and operates a metal work manufacturing facility located at 44533 South Grimmer Blvd. in Fremont, California (the "Facility") which discharges storm water pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit").  A map of the Facility is attached hereto as Exhibit A and incorporated by reference;

**WHEREAS**, on or about May 26, 2009, CSPA provided Melrose with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

**WHEREAS**, on August 11, 2009, CSPA filed its Complaint in the United States District Court for the Northern District of California against Melrose (*California Sportfishing Protection Alliance v. Melrose Metal Products, Inc.*, Case No. 3:09-cv-03666-WHA).  A true and correct copy of the Complaint, including the 60-Day Notice Letter, is attached hereto as Exhibit B and incorporated by reference;

1

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. –
Case No. 3:09-cv-03666-WHA

**WHEREAS**, Melrose denies any and all of CSPA's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, CSPA and Melrose, through their authorized representatives and without either adjudication of CSPA's claims or admission by Melrose of any alleged violation or other wrongdoing, have chosen to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, CSPA and Melrose have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CSPA and Melrose hereby agree as follows:

## EFFECTIVE DATE

1.  The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

## COMMITMENTS OF CSPA

2.  **Stipulation to Dismiss and [Proposed] Order.**  Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 18 below, CSPA shall file a Stipulation to Dismiss and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Eastern District of California ("District Court"), with this AGREEMENT attached and incorporated by reference, specifying that CSPA is dismissing all claims in CSPA's Complaint.  Consistent with Paragraphs 24 and 25 herein, the Stipulation to Dismiss and [Proposed] Order shall state that the District Court will maintain jurisdiction through December 14, 2012 for purposes of resolving any disputes between the SETTLING PARTIES with respect to any provision of this AGREEMENT.  If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void.

2

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. –
Case No. 3:09-cv-03666-WHA

## **COMMITMENTS OF MELROSE**

3. **Compliance with General Permit.** Melrose agrees to operate the Facility in compliance with the applicable requirements of the General Permit and Clean Water Act.

4. **Implemented Storm Water Controls**. Melrose shall maintain in good working order all storm water collection and treatment systems currently installed or to be installed pursuant to this AGREEMENT, including but not limited to, existing housekeeping measures.

5. **Additional Best Management Practices.** Within THIRTY (30) calendar days after the EFFECTIVE DATE, Melrose shall implement the following structural and non-structural best management practices (õBMPsö) to improve the storm water pollution prevention measures at the drop inlets and outfalls at the Facility:

   a. To clean up the parking lot and paved areas of the Facility, Melrose has employed a mechanical sweeper to sweep up all of the large rocks and debris and then employed a vacuum truck to suck up the remaining major sediment and debris. Melrose shall have its employees perform hand sweeping and vacuuming of the entire parking lot, including the areas around fence posts, against walls, against the fence, and other areas where the mechanical sweeper and vacuum truck did not reach.

   b. Melrose shall contract with Universal Sweeping Services to perform regenerative sweeping of the parking lot and paved areas at the Facility once every two (2) months, year-round. This shall be in addition to the other sweeping and maintenance that regularly occurs at the Facility.

   c. Melrose has contracted with an environmental company install Triton filters at each of the four (4) drop inlets and at each of the three (3) down spouts at the Facility. Melrose shall contract with this company such that the company inspects and replaces the filters as necessary on a regular basis. The company shall conduct inspections at least two (2) times per

3

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. ó
Case No. 3:09-cv-03666-WHA

year. Melrose employees shall inspect and clean all debris from the collector tubs on a regular basis.

    d.    Melrose has installed new drain grates at each of the four (4) drop inlets to minimize any potential pollutants that might be caused by rust or other sediments from the old grates.

    e.    Melrose has installed a berm in the back portion of the Facility near drop inlet #4 (where sandblasting used to occur) to ensure that no water can exit or run onto the Facility.

6. **Monitoring**. Melrose agrees to perform the additional monitoring described herein during the 2009-2010, 2010-2011, and 2011-2012 wet seasons.

    a.    During the 2009-2010 and wet season, Melrose shall sample and analyze storm water discharges from four (4) qualifying storm events that result in discharge consistent with the requirements and protocols set forth in the General Permit. During the 2010-2011 and 2011-2012 wet season, Melrose shall sample and analyze storm water discharges from three (3) qualifying storm events that result in discharge consistent with the requirements and protocols set forth in the General Permit. Melrose shall collect samples at each of the four discharge locations at the Facility.

    b.    Melrose shall analyze each storm water sample taken in accordance with the General Permit and this Agreement for, at a minimum, total suspended solids, pH, oil and grease or total organic carbon, specific conductance, iron, zinc, nitrate plus nitrate nitrogen, aluminum, nickel, copper, and lead. If after two (2) consecutive sampling events, Melrose does not detect nickel, copper, or lead in excess of the levels of potential concern described below in Paragraph 9, Melrose shall cease sampling of that particular metal.

4

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. ó
Case No. 3:09-cv-03666-WHA

      c.      Melrose shall conduct monthly visual observations of each discharge location for at least one qualifying rain event per month that results in any discharge from the Facility. Melrose shall maintain a written log describing these observations.

      d.      All maintenance, repair, and replacement activities relating to the Facility's storm water management program shall be recorded and described on appropriate log books or sheets. Such logs shall include, but not be limited to, filter repairs and replacements. Sample log sheets shall be included in the Facility's SWPPP. Completed logs for each wet season shall be included as part of the Facility's Annual Report submitted to the California Regional Water Quality Control Board, San Francisco Region ("Regional Board").

      e.      During each of its monthly wet weather storm inspections required by the General Permit, Melrose shall photograph each storm water discharge location.

      f.      All photographs required by this Settlement Agreement shall be in color and electronically formatted. Each photograph shall be identified by date, the person taking the photograph and the location of the Facility being photographed. The title of each electronic photograph shall include, at a minimum, the date it was taken, the initials of the person taking the photograph and the location of the photographed area (for example, "3.13.2010 MRL D1"). Any photograph required by this Settlement Agreement shall be provided to CSPA upon request via mutually agreed upon format.

    7.    **Monitoring Results.**  Results from Melrose's sampling and analysis during the term of this AGREEMENT shall be provided to CSPA within 14 days of receipt of the sampling results by Melrose or its counsel.

5

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. –
Case No. 3:09-cv-03666-WHA

8.      **Amendment of SWPPP.**  Within sixty (60) days of the EFFECTIVE DATE of this AGREEMENT, Melrose shall amend the Facility's SWPPP to incorporate all changes, improvements, sample log forms, and best management practices set forth in or resulting from this AGREEMENT.  Melrose shall ensure that all maps, tables, and text comply with the requirements of the General Permit.  Melrose shall ensure that the SWPPP describes all structural and non-structural BMPs, details the measures to be installed, and discusses why such BMPs will be effective in addressing the pollutant sources at the Facility.  A copy of the amended SWPPP shall be provided to CSPA within thirty (30) days of completion.

9.      **Meet and Confer Regarding Exceedance of Levels of Potential Concern.**  If analytical results of storm water samples taken by Melrose during the 2009-2010, 2010-2011, and/or 2011-2012 wet season indicate that storm water discharges from the Facility exceed the following levels of potential concern – Total Suspended Solids: 100 mg/L; Specific Conductance: 200 µmhos/cm; Oil & Grease: 15 mg/L or Total Organic Carbon: 110 mg/L; pH: 6.0-9.0 s.u.; Aluminum: 0.75 mg/L; Nitrate + Nitrate Nitrogen: 0.68 mg/L; Zinc: 0.117 mg/L; Copper: 0.0636 mg/L; Lead: 0.0816 mg/L; Nickel: mg/L1.417; and Iron: 1.0 mg/L – Melrose agrees to take additional feasible measures aimed at reducing pollutants in the Facility's storm water to levels at or below these levels.

In furtherance of that objective, Melrose shall prepare a written statement ("Memorandum") discussing:

(1) Any exceedance or exceedances;

(2) An explanation of the possible cause(s) and/or source(s) of any exceedance; and

(3) Additional feasible best management practices ("BMPs") that will be taken to further reduce the possibility of future exceedance(s).

Such Memorandum shall be e-mailed and sent via first class mail to CSPA not later than July 30th following the conclusion of each wet season.

10.     Any additional measures set forth in the Memorandum shall be implemented as soon as practicable, but not later than sixty (60) days from the due date of the Memorandum, except where 1) structural changes require longer than sixty (60) days to complete; 2) weather-

6

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. –
Case No. 3:09-cv-03666-WHA

related conditions render immediate implementation infeasible; or 3) the SETTLING PARTIES agree in writing to defer implementation of specific measures in order to effectively meet and confer in accordance with Paragraph 11.  Within thirty (30) days of implementation, Melrose's SWPPP shall be amended to include all additional BMP measures designated in the Memorandum.

11. Upon receipt of the Memorandum, CSPA may review and comment on any additional measures.  If requested by CSPA within thirty (30) days of receipt of such Memorandum, CSPA and Melrose shall meet and confer and conduct a site inspection within ninety (90) days after the receipt of the Memorandum to discuss the contents of the Memorandum and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the Levels of Potential Concern.  If within thirty (30) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Memorandum, the SETTLING PARTIES may agree to seek a settlement conference with the Magistrate Judge assigned to this action pursuant to Paragraphs 24 and 25 below.  If the SETTLING PARTIES fail to reach agreement on additional measures, CSPA may bring a motion before the Magistrate Judge consistent with Paragraphs 24 and 25 below.  If CSPA does not request a meet and confer regarding the Memorandum within the thirty (30) day comment period provided for in this paragraph, CSPA shall waive any right to object to such Memorandum pursuant to this AGREEMENT.

12. Any concurrence or failure to object by CSPA with regard to the reasonableness of any additional measures required by this AGREEMENT or implemented by Melrose shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water into compliance with applicable water quality criteria or the General Permit's BAT requirements.

13. In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, Melrose shall permit representatives of CSPA to perform one (1) additional site visit to the Facility during normal daylight business hours during the term of this AGREEMENT; provided that CSPA provides Melrose via e-mail with at least one week prior written notice.

7

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. –
Case No. 3:09-cv-03666-WHA

14. **Provision of Documents and Reports.**  During the life of this AGREEMENT, Melrose shall provide CSPA with a copy of all documents submitted to the Regional Board or the State Water Resources Control Board ("State Board") concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit.  Such documents and reports shall be mailed to CSPA contemporaneously with submission to such agency.  Melrose also shall provide CSPA a copy of all documents referenced in this agreement, including but not limited to logs, photographs, or analyses, within fourteen (14) days of a written request (via e-mail or regular mail) by CSPA.

15. **Mitigation Payment**.  In recognition of the good faith efforts by Melrose to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by Melrose of any penalties which may have been assessed in this action if it had proceeded to trial, the SETTLING PARTIES agree that Melrose will pay the sum of twenty thousand dollars ($20,000) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects within the San Francisco Bay/Sacramento – San Joaquin Delta Estuary, relating to water quality improvements in that area.  Payment shall be made by Melrose within fifteen (15) calendar days of the District Court's entry of the Order described in Paragraph 2 of this AGREEMENT, whichever is sooner.  Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 6008 College Avenue, Oakland, CA 94618, Attn: Tim Little.  The Rose Foundation shall provide notice to the SETTLING PARTIES within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

16. **Fees, Costs, and Expenses**.  As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, Melrose shall pay CSPA the sum of twenty-two thousand five hundred dollars ($22,500).  An initial payment of twelve thousand five hundred dollars ($12,500) shall be made by Melrose within seventy-five (75) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.  A second payment of ten thousand dollars ($10,000) shall be paid by Melrose to CSPA within one hundred and thirty five (135) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.  Payment by Melrose to CSPA shall be made in

8

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. –
Case No. 3:09-cv-03666-WHA

the form of a single check payable to "Lozeau Drury LLP Attorney-Client Trust Account," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the Effective Date of this AGREEMENT.

17. **Compliance Oversight Costs**: As reimbursement for CSPA's future costs that will be incurred in order for CSPA to monitor Melrose's compliance with this AGREEMENT and to effectively meet and confer and evaluate monitoring results for the Facility, Melrose agrees to reimburse CSPA for costs incurred in overseeing the implementation of this AGREEMENT up to but not exceeding two thousand five hundred dollars ($2,500.00) per wet season. Costs reimbursable pursuant to this paragraph may include, but are not limited to, costs by CSPA or its counsel to conduct site inspections, review of water quality sampling reports, review of annual reports, discussion with representatives of Melrose concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, and water quality sampling. Up to three annual payments (one addressing any monitoring associated with the 2009-2010 wet season, one addressing monitoring associated with the 2010-2011 wet season, and one addressing monitoring associated with the 2011-2012 wet season) shall be made payable to Lozeau Drury LLP Attorney-Client Trust Account within thirty (30) days of receipt of an invoice from CSPA which contains a description of fees and costs incurred by CSPA to monitor implementation of the SETTLEMENT AGREEMENT during the previous twelve (12) months.

18. **Review by Federal Agencies.** CSPA shall submit this AGREEMENT to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five (5) days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5. The Agencies' review period expires forty-five (45) days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, copies of which shall be provided to Melrose upon receipt by CSPA. In the event that the Agencies comment negatively on the provisions of this AGREEMENT, CSPA and Melrose agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies. If CSPA and Melrose are unable to resolve any issue(s) raised by the Agencies in their comments, CSPA and Melrose

9

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. –
Case No. 3:09-cv-03666-WHA

agree to expeditiously seek a settlement conference with the Judge assigned to the Complaint in this matter to resolve the issue(s).

## NO ADMISSION OR FINDING

19.     Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation.  However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

20.     In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each other arising from CSPAøs allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

21.     The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

10

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. ó
Case No. 3:09-cv-03666-WHA

22.     For the period beginning on the Effective Date and ending on December 14, 2012, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will file any lawsuit against Melrose seeking relief for the alleged violations of the Clean Water Act or violations of the General Permit.  CSPA further agrees that, beginning on the EFFECTIVE DATE and ending on December 14, 2012, CSPA will not support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against Melrose that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge Melrose's compliance with the Clean Water Act or the General Permit.

## TERMINATION DATE OF AGREEMENT

23.     This AGREEMENT shall terminate on December 14, 2012.

## DISPUTE RESOLUTION PROCEDURES

24.     Except as specifically noted herein, any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure.  The SETTLING PARTIES agree to first meet and confer to resolve any dispute arising under this AGREEMENT.  In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Magistrate Judge assigned to this action.  In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the SETTLING PARTIES agree to submit the dispute via motion to the Magistrate Judge.

25.     In resolving any dispute arising from this AGREEMENT, the Magistrate Judge shall have discretion to award attorneys' fees and costs to either party.  The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Magistrate Judge.  The Magistrate Judge shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof.  The SETTLING PARTIES agree to file

11

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. –
Case No. 3:09-cv-03666-WHA

any waivers necessary for the Magistrate Judge to preside over any settlement conference and motion practice.

## BREACH OF SETTLEMENT AGREEMENT

26. **Impossibility of Performance.** Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established. In the event that the SETTLING PARTIES cannot timely agree upon the terms of such a stipulation, either of the SETTLING PARTIES shall have the right to invoke the dispute resolution procedure described herein.

## GENERAL PROVISIONS

27. **Construction.** The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

28. **Choice of Law.** This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

29. **Severability.** In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

30. **Correspondence.** All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, or overnight mail as follows:

12

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. ó
Case No. 3:09-cv-03666-WHA

<u>If to CSPA:</u>

Bill Jennings, Chairman
California Sportfishing Protection Alliance
3536 Rainier Road
Stockton, CA  95204
Tel: (209) 464-5067
deltakeep@aol.com

And to:

Michael R. Lozeau
Douglas J. Chermak
Lozeau | Drury LLP
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
michael@lozeaudrury.com
doug@lozeaudrury.com

<u>If to Melrose:</u>

Mitchell A. Hoppe
Melrose Metal Products, Inc.
44533 S. Grimmer Blvd.
Fremont, CA 94538
Tel: (510) 657-8771
mhoppe@gomelrose.com

And to:

Ronald G. Peck
Law Offices of Schenone & Peck
1260 B Street, Suite 350
Hayward, CA 94541
Tel: (510) 581-6611
rpeck1251@aol.com

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any change of address or addresses shall be communicated in the manner described above for giving notices.

13

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. ó
Case No. 3:09-cv-03666-WHA

31. **Counterparts.** This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

32. **Assignment.** Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

33. **Modification of the Agreement:** This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

34. **Full Settlement.** This AGREEMENT constitutes a full and final settlement of this matter. It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

35. **Integration Clause.** This is an integrated AGREEMENT. This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

36. **Authority.** The undersigned representatives for CSPA and Melrose each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: MARCH 2, 2010          MELROSE METAL PRODUCTS, INC.

By: Mitchell A. Happe
Title: President

14

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. –
Case No. 3:09-cv-03666-WHA

Date: _____, 2010

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

By: Bill Jennings
Title: Executive Director

**APPROVED AS TO FORM:**

Date: March 2, 2010

For DEFENDANT

LAW OFFICES OF SCHENONE & PECK

By: Ronald G. Peck, Esq.

Date: _____, 2010_

For PLAINTIFF
LOZEAU | DRURY LLP

By: Michael R. Lozeau, Esq.

Date: 22 Feb, 2010

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

By: Bill Jennings
Title: Executive Director

**APPROVED AS TO FORM:**

Date: _____, 2010

For DEFENDANT

LAW OFFICES OF SCHENONE & PECK

By: Ronald G. Peck, Esq.

Date: February 23, 2010

For PLAINTIFF

LOZEAU | DRURY LLP

By: Michael R. Lozeau, Esq.

15

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Melrose Metal Products, Inc. – Case No. 3:09-cv-03666-WHA